UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carmen Prosper,<br><br>                    Plaintiff,<br><br>          -against-<br><br>BronxWorks, Inc. et al.,<br><br>                    Defendants.<br><hr><br>Najee Brown,<br><br>                    Counter-Plaintiff,<br><br>          -against-<br><br>Carmen Prosper,<br><br>                    Counter-Defendant. | 25-cv-4956 (AS)<br><br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

Plaintiff Carmen Prosper sued her former employer and two of her former colleagues after her employment was terminated. One of the defendants, Najee Brown, filed counterclaims against Prosper. Prosper moved to dismiss the counterclaims. For the following reasons, Prosper's motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

For the purposes of the motion to dismiss only, the Court assumes the truth of all facts Brown has pleaded in his counterclaims.

Najee Brown was hired by BronxWorks ("BW") in August 2018. Dkt. 25 ¶ 12.[1] He met Carmen Prosper in March 2024, when she started working at BW. *Id.* ¶ 18. Brown and Prosper communicated frequently and sent text messages to one another. *Id.* ¶ 19. Prosper was listed in Brown's phone as "Cam SOS." *Id.*

After Brown found other employment that he thought would be a better opportunity, he gave two weeks' notice on August 9, 2024 to BW that he planned to resign. *Id.* ¶¶ 23–24. Brown also decided that he wanted to seek a formal relationship with Prosper. *Id.* ¶ 25.

---

[1] All paragraph numbers in Dkt. 25 refer to the paragraphs in the counterclaims (starting on page 23), not to paragraphs in the answer section of the document.

On August 13, 2024, Brown and Prosper exchanged messages where they stated their attraction to one another. *Id.* ¶ 28. Both expressed a desire to stay in touch. *Id.* Prosper said that when she saw Brown outside of work she would "jump[] on" him and "[c]ross[] [her] legs over" Brown. *Id.* ¶ 30.

The following day, Prosper visited Brown in his office. Brown says they merely exchanged pleasantries, spoke about the future, and hugged (with Brown giving Prosper a kiss on the forehead). *Id.* ¶ 40. He says that Prosper told him in a subsequent text message that Brown "could of just kissed" her. *Id.*

A week later, Prosper's tone changed. She started to claim that Brown "categorized [her] as a hoe" and during the meeting in his office "took [his] penis out on [her] and said 'suck this dick.'" *Id.* ¶ 51. Brown believes that Prosper believed that she was going to be terminated and made the allegations "as [a] safety net." *Id.* ¶ 64.

Prosper made statements to three BW employees, including Brown's supervisor, about the alleged incident. *Id.* ¶ 71. She accused him of being "a womanizer, abusive, [a] sexual deviant and a sexual predator." *Id.* She also filed a police report. *Id.* Brown spoke to the three employees and police officer to show them their text messages, which led Brown's supervisor to deem Prosper's statements a "setup" and led the police to close the case. *Id.*

Prosper filed this lawsuit against BW, Brown, and another BW employee on June 12, 2025. Dkt. 1. She recounts the incident in Brown's office, alleging that he locked the door and closed the blinds before exposing himself. *Id.* ¶¶ 24–28. She alleged that when she reported the incident, she was told not to report to work, had her pay suspended, and was pressured to transfer to a position with less pay. *Id.* ¶ 31. She alleges she was ultimately terminated in November 2024. *Id.* ¶ 40. She alleged discrimination and retaliation in violation of state and federal law, as well as assault. *Id.* ¶¶ 41–119.

Brown filed counterclaims against Prosper. Dkt. 25. He alleges defamation, tortious interference with prospective business relations, intentional infliction of emotional distress, abuse of process, injurious falsehood, and malicious prosecution. *Id.* ¶¶ 98–149.

Prosper moved to dismiss Brown's counterclaims. Dkt. 26. She argues that the Court lacks subject-matter jurisdiction over the counterclaims, that it should decline to exercise supplemental jurisdiction over the counterclaims, and that they fail to state a claim. Dkt. 27 at 3–10.

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when [a] district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up). "In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings." *Est. of Close v. Cigna Health & Life Ins. Corp.*, 2023 WL 8846562, at *2 (S.D.N.Y. Dec. 21, 2023).

2

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298–99 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 299 (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

## DISCUSSION

### I.    The Court has jurisdiction

The Court first addresses Prosper's challenge to subject-matter jurisdiction over the counterclaims.

### A.    Regardless of whether the counterclaims are compulsory or permissive, the Court has supplemental jurisdiction over them

A counterclaim may either be compulsory or permissive. The question is relevant to jurisdiction because "[c]ompulsory counterclaims do not require an independent grant of jurisdiction." *Est. of Close v. Cigna Health & Life Ins. Corp.*, 2023 WL 8846562, at *2 n.1 (S.D.N.Y. Dec. 21, 2023). On the other hand, permissive counterclaims do require an independent jurisdictional source. *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 210–13 (2d Cir. 2004). With exceptions not relevant here, a counterclaim is compulsory where it "arises out of the transaction or occurrence that is the subject matter of the [plaintiff's] claim." Fed. R. Civ. P. 13(a)(1)(A). All other counterclaims are permissive. Fed. R. Civ. P. 13(b).

The parties dispute whether Brown's counterclaims arise out of the same transaction or occurrence as Prosper's claims. But the Court need not determine whether the counterclaims are compulsory or permissive because jurisdiction would exist in either case. Although the parties are not diverse and Brown's claims do not raise a federal question, the Court has supplemental jurisdiction over his claims.

District courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). For Brown's state-law claims to form part of the same case or controversy as the underlying federal claims in Prosper's complaint, they "must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

That standard is met here. Both Prosper's claims and Brown's counterclaims turn on whose account of the August 14, 2025 meeting is correct, so that meeting is the common nucleus of operative fact. Indeed, the common nucleus of operative fact is even clearer in this case than it was

3

in *Jones*, where the Second Circuit held that the district court could exercise jurisdiction over the counterclaims under Section 1367(a) because "[b]oth the ECOA claim and the debt collection claims originate from the Plaintiffs' decisions to purchase Ford cars." 358 F.3d at 214. There, the sources of proof would have been very different—the plaintiffs would be looking for evidence of racial discrimination, while Ford Credit would be presenting evidence of unpaid balances on the loans. By contrast, much of the evidence underlying both Prosper's and Brown's claims will relate back to the alleged incident in Brown's office. So if Section 1367(a) was satisfied in *Jones*, it clearly is satisfied here.

Prosper's arguments to the contrary are off base and unavailing. She analogizes to two cases, *Harris v. Steinem*, 571 F.2d 119 (2d Cir. 1978), and *Sanders v. New World Design Build, Inc.*, 2020 WL 1957371 (S.D.N.Y. Apr. 23, 2020). But those cases speak to the distinct "transaction or occurrence" test that applies to compulsory counterclaims, and which *Jones* makes clear is narrower than the "common nucleus of operative fact" test. As discussed above, the latter test is satisfied here.

Moreover, *Steinem* involved a different situation, where the plaintiff's federal claim had been dismissed, and the district court declined to exercise jurisdiction over the counterclaims under Section 1367(c), a conclusion that the Second Circuit did not revisit. 572 F.2d at 122. For that reason, in *Steinem*, there would only be jurisdiction over the counterclaims if they were compulsory and not permissive. Here, the plaintiff's federal claim is still in the case, and as discussed below, the Court does not decline the exercise of jurisdiction under Section 1367(c). As in *Jones*, Section 1367 furnishes an independent basis of jurisdiction for Brown's counterclaims.

### B. The Court will exercise jurisdiction over the counterclaims

Even where the requirements of Section 1367(a) are satisfied, district courts "may decline to exercise supplemental jurisdiction over a claim" in certain cases. 28 U.S.C. § 1367(c). "It is a truism of federal civil procedure that in providing that a district court 'may' decline to exercise such jurisdiction, § 1367(c) is permissive rather than mandatory." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 726 (2d Cir. 2013) (cleaned up). In short, even if the Section 1367(c) factors apply, the Court retains the ability to exercise jurisdiction so long as the Section 1367(a) requirements are met.

Prosper suggests that three of the factors apply: that the counterclaims raise a "complex issue of State law"; that they "substantially predominate[] over" the federal law claims; and that this is an "exceptional circumstance[]" with "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)–(2), (4); *see also* Dkt. 27 at 5–6. None of those arguments is persuasive.

#### 1. The counterclaims do not raise a complex issue of state law

Prosper's sole argument that the counterclaims raise a complex issue of state law is that the scope of "absolute and qualified privileges" in defamation are "nuanced" and therefore "best decided by the state courts." Dkt. 27 at 6 (citation omitted). Prosper does not develop the argument, and the Court is unpersuaded.

4

While Prosper does raise privilege defenses to the defamation claims, those defenses are not so complex to justify declining jurisdiction. Federal courts routinely address the scope of privilege defenses to state-law claims of defamation, as this Court has previously done.

### 2.    The state claims do not substantially predominate

Prosper similarly argues that the state-law claims would substantially predominate because the "scope of proof" on the counterclaims "would dwarf the resources required for the underlying federal claim." *Id.*

Prosper does not cite any authority or evidence for why that would be the case, nor does it follow from the nature of the asserted claims. The evidence required for a discrimination claim under Title VII is in many ways more complex than for a common-law defamation claim, and here, the facts underlying both Prosper's and Brown's claims overlap in several respects. This argument fails.

### 3.    There are no compelling reasons to decline jurisdiction

Prosper also cites the final Section 1367(c) factor, that there are "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). She argues that allowing a counterclaim in a discrimination case would have a "chilling effect on potential plaintiffs." Dkt. 27 at 6.

This argument fails. Prosper's argument would lead to a blanket presumption against counterclaims in any discrimination case. The Second Circuit, however, has expressed "caution . . . concerning use of subsection 1367(c)(4)." *Jones*, 358 F.3d at 215. Rather than endorsing Prosper's blanket rule, that court—in a case with counterclaims filed against plaintiffs who alleged discrimination—said that there must be "truly compelling circumstances that militate against exercising jurisdiction." *Id.*

While the Court recognizes that the possibility of any sort of counterclaim can discourage a plaintiff from filing suit, Prosper does not explain why the counterclaims in this case create such a strong disincentive to rise to the level of a "truly compelling circumstance[]." *Id.* And there are good reasons to think that this is not what Congress had in mind when it included that exception. For one, there would seem to be nothing stopping Brown from immediately refiling the identical claims in state court, so a plaintiff in Prosper's shoes would not be immune from any counterclaims. If anything, any "chill" would be worse, as Prosper would be faced with the prospect of pursuing her case in federal court, while defending against Brown's claims in a state forum. And second, it would lead to a peculiar outcome where the Court would be concerned about potential "chilling effect[s]" only where the parties are not diverse. If Brown happened to live across the Hudson River in New Jersey, the Court would be required to entertain any counterclaims so long as he sought more than $75,000 in total. *See* 28 U.S.C. § 1332(a)(1); *see also Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given [to] them"). Thus, the Court concludes that there are no compelling circumstances in this case justifying declining jurisdiction.

## II.    The defamation claims can proceed

Turning to the merits, Brown's first three counterclaims sound in defamation (libel, libel per se, and slander). Dkt. 25 ¶¶ 98–114. The claims are rooted in Prosper's statements and writings to three BW employees as well as to the police. *Id.* Prosper does not challenge the pleading of the claims' elements, but rather argues that they are barred by absolute or qualified privilege under New York law.

### A.  No absolute privilege applies

Prosper argues that her reports to the police are protected by absolute privilege and therefore cannot give rise to a defamation claim. Dkt. 27 at 7. The Court disagrees.

In support of her argument for absolute privilege, Prosper cites *Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015), which states that "absolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court when such words and writings are material and pertinent to the questions involved." *Id.* at 718 (quotation omitted). But that does not extend to this case. For one, it's not clear that the absolute privilege that the New York Court of Appeals laid out in *Front* applies to a non-attorney statement. But even if it does, the counterclaims here do not stem from any statements that Prosper made in litigation; rather, they stem from statements she made to the police where no criminal case was filed.

Resisting this conclusion, Prosper points to the fact that Brown's counterclaims labeled her statements to the police as being in a "supporting deposition." Dkt. 27 at 7. She points to New York criminal procedure rules that label a "supporting deposition" to be a formal instrument that is intended to support a prosecution. *Id.* But even if Brown used the phrase "supporting deposition" in the same sense as the New York procedural rules—which is not immediately apparent to the Court—absolute privilege would not apply. *Front*, Prosper's sole authority for absolute privilege, explicitly said that statements made in *advance* of litigation are entitled only to qualified privilege, not absolute privilege. 24 N.Y.3d at 719–20. And the New York Court of Appeals has noted that communications with prosecutors prior to the filing of criminal charges are protected only by qualified privilege. *Toker v. Pollak*, 44 N.Y.2d 211, 221 (1978). Thus, absolute privilege does not apply.

### B.  The Court cannot conclude that Brown's claims would be barred by qualified privilege on the face of the counterclaims

Prosper also argues that the defamation claims fail due to qualified privilege.[2] "[Q]ualified privilege extends to a communication made by one person to another upon a subject in which both have an interest." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (1992) (quotation and punctuation

---

[2] Prosper's briefing only argues that her communications with the BW employees fall within qualified privilege. She does not argue in the alternative that it would cover her communications with the police if absolute privilege does not apply. Nonetheless, the Court construes her briefing as arguing that qualified privilege applies to all of Brown's counterclaims.

omitted). "The shield provided by a qualified privilege may be dissolved if plaintiff can demonstrate that defendant spoke with 'malice.'" *Id.* "Malice" can either be (1) common-law malice (spite or ill will) or (2) "actual malice" under *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *Liberman*, 80 N.Y.2d at 437–38. Actual malice requires that the "plaintiff must demonstrate that the statements were made with a high degree of awareness of their probable falsity." *Id.* at 438 (cleaned up).

Brown does not appear to contest that qualified privilege might apply to his defamation claims. Instead, he alleges that his counterclaims plausibly allege malice to overcome the privilege. Brown alleged that he gave Prosper only a hug and a kiss on the forehead. Dkt. 25 ¶ 40. If true, that is sufficient to infer that Prosper knew that her allegations that Brown had exposed himself were false (since she was in the room), which would satisfy actual malice. *See Sullivan*, 376 U.S. at 280 ("knowledge that [a statement] was false" is sufficient to show actual malice). As the New York Court of Appeals has made clear that actual malice can defeat qualified privilege, *Liberman*, 80 N.Y. 2d at 437–38, that is sufficient at the pleading stage.

Prosper's arguments to the contrary are unavailing. She focuses on arguments for common-law malice and argues that Brown's allegations of her state of mind toward him are conclusory and insufficient. But even if true, actual malice focuses on her "attitude toward the truth" instead of her attitude toward Brown. *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 99 (2d Cir. 2000). Brown's defamation claims can therefore proceed.

## III.    The tortious interference claim is dismissed

Prosper next seeks dismissal of the tortious interference claim. "Under New York law, to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quotation omitted).

Brown's counterclaim alleges that Prosper "intentionally interfered with Brown's prospective business relations by making false and defamatory statements about him to his supervisors and potentially to future employers." Dkt. 25 ¶ 117. But vague allegations about interference with a potential relationship are insufficient. "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship.'" *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015) (quoting *McGill v. Parker*, 179 A.D.2d 98, 105 (1st Dep't 1992)).

In his opposition, Brown recasts the claim as one covering interference with his former co-workers who could serve as references for a future job. Dkt. 29 at 18–19. Setting aside the fact that that is an unnatural reading of the complaint, Brown does not point to any authority that suggests that a relationship with a former co-worker who could be a future reference for an as-yet-undetermined job could be a "business relation" that would qualify. This claim is dismissed.

## IV.    The injurious falsehood claim is dismissed

Prosper next challenges Brown's counterclaim for injurious falsehood. Prosper challenges only two aspects of the claim: first, she argues that the claim is duplicative of Brown's defamation claims, and second, that Brown failed to plead special damages.

### A.    Brown may plead alternative claims

As to her argument that the claim is duplicative, Prosper cites *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012). But in that case, the Second Circuit had already affirmed summary judgment on the defamation claims based on qualified privilege. *Id.* at 894–95. Since the facts for both the defamation and injurious falsehood claims were identical, the court held that they fell together. *Id.* at 895. By contrast, the Court here allows the defamation claim to proceed, so *Hengjun* would not apply. Instead, while a "plaintiff may not plead the same claim more than once, which would constitute a duplicative claim, [he] may plead claims that provide alternative bases for relief." *In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300, 325 (S.D.N.Y. 2019). And since it is possible that one claim could fail while the other survives, they represent alternative bases for relief.

### B.    Brown has not pleaded special damages

"Special damages are a necessary element of the tort of 'injurious falsehood.'" *Cromarty v. Prentice-Hall*, 72 A.D.2d 782, 783 (2d Dep't 1979). "Special damages consist of the loss of something having economic or pecuniary value which must flow directly from the injury to reputation caused by the defamation." *Celle v. Filipino Rep. Enters. Inc.*, 209 F.3d 163, 179 (2d Cir. 2000) (cleaned up).

Brown's allegations of special damages are insufficient. He alleges that Prosper's accusations have made it "difficult to secure future employment commensurate with his qualifications and experience" and that "[p]rospective employers did not seek out Mr. Brown, when they heard these false and mistruth statements." Dkt. 25 ¶¶ 94, 139. He alleges that has caused him "tens of thousands of dollars in damages." *Id.* ¶ 94. But that's not enough. "A pleading of special damages must be 'specific,' and 'round amounts' are insufficient." *Joyce v. Thompson Wigdor & Gilly LLP*, 2008 WL 2329227, at *12 n.3 (S.D.N.Y. June 3, 2008) (citation omitted). Brown must identify specific opportunities that he was not able to pursue because of Prosper's alleged injurious falsehood and be able to quantify them. While some amount of estimation may be necessary at the pleading stage, Brown cannot rely on nonspecific allegations of unnamed prospective employers.

To the extent that Brown can point to specific employers who decided not to hire him because of Prosper's alleged statements, he may amend his counterclaim.

## V.    The intentional infliction of emotional distress claim is dismissed

Prosper next argues that Brown's intentional infliction of emotional distress (IIED) claim should be dismissed since the alleged conduct is not sufficiently "extreme and outrageous." The Court agrees.

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999). IIED "remains a highly disfavored tort under New York law" that is "to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (cleaned up).

New York courts have held that IIED claims are typically barred where they overlap with a claim for defamation. *See Herlihy v. Metro. Museum of Art*, 214 A.D.2d 250, 263 (1st Dep't 1995). And although Brown points to a single case where the Second Department allowed a claim that a defendant who "threatened to make public the allegedly false allegation that the plaintiffs subjected her to sexual harassment and sexual assault" and "filed a false complaint with the New York City Police Department" to proceed, *Nigro v. Pickett*, 39 A.D.3d 720, 721–22 (2d Dep't 2007), the Court believes that the New York Court of Appeals would not permit a IIED claim in a case like this. *See Fischer v. Maloney*, 43 N.Y.2d 553, 557–58 (1978) (questioning "whether the doctrine of liability for intentional infliction of extreme emotional distress should be applicable where the conduct complained of falls well within the ambit of other traditional tort liability"). The IIED claim is therefore dismissed.

## VI.    The abuse of process claim is dismissed

Prosper next argues that Brown fails to state a claim for abuse of process. The Court agrees.

"In New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (cleaned up). The "legal process" element requires a court to issue a "direction or demand that the person to whom it is directed shall perform or refrain from the doing of some prescribed act." *Stevens & Co. LLC v. Espat*, 2025 WL 950989, at *11 (S.D.N.Y. Mar. 28, 2025) (quoting *Williams v. Williams*, 246 N.E.2d 333, 335 (N.Y. 1969)).

Brown's counterclaims do not allege any "legal process" that was issued toward him. Although Prosper may have filed a police report, Brown does not allege that the report resulted in any court directive or demand, let alone one that required him to perform any action or refrain from doing anything. This claim is dismissed.

## VII.    The malicious prosecution claim is dismissed

Prosper finally argues that Brown fails to state a claim for malicious prosecution. The Court agrees here, too.

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4)

actual malice as a motivation for defendant's actions." *Stampf v. Long Island R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010)).

Here, Brown has not shown "the initiation or continuation of a criminal proceeding." Although he argues that Prosper's filing of the police report is sufficient to constitute the initiation or continuation of a criminal proceeding, that is insufficient for malicious prosecution. Instead, "[s]uch a claim may arise only after an arraignment or indictment or some other 'evaluation by a neutral body that the charges [were] warranted.'" *Stile v. City of New York*, 172 A.D.2d 743, 744 (2d Dep't 1991) (quoting *Broughton v. City of New York*, 37 N.Y.2d 451, 459 (1975)). Since Brown does not allege any such proceeding occurred, the claim for malicious prosecution is dismissed.

## CONCLUSION

Prosper's motion to dismiss the counterclaims is GRANTED IN PART and DENIED IN PART. The defamation claims may proceed; the remaining claims are DISMISSED. Brown may file an amended counterclaim complaint within 14 days of this order if he wishes to replead any additional claims beyond defamation. But he may prefer to focus his time and resources on the defamation claims at the core of his case, rather than trying to recast defamation into different, and more tenuous, causes of action.

The Clerk of Court is respectfully directed to terminate Dkt. 26.

SO ORDERED.

Dated: May 20, 2026
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge